FILED

MAY 10 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 06-076 (ESH) |
| v. | : | |
| MARIA R. HARTLINE, | : | VIOLATION: 18 U.S.C. § 641 |
| | : | (Embezzlement of Government Money) |
| Defendant. | : | |

## STATEMENT OF THE OFFENSE

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, defendant MARIA R. HARTLINE ("HARTLINE") agrees and stipulates as follows:

1. HARTLINE was a civilian employed as a secretary in the headquarters of the United States Air Force Chief of Chaplain's Office, at Bolling Air Force Base, in the District of Columbia.

2. HARTLINE was paid on a bi-weekly basis and was required to obtain advance, written approval for any overtime hours she was to work—a requirement of which she was specifically aware.

3. As a federal employee, HARTLINE was required to submit information showing the number of hours she worked (regular hours), the number of hours she was absent because of illness or medical appointments (sick leave), and the number of hours she was absent because she was on vacation (annual leave). HARTLINE was required by government regulations to have a supervisor approve her time to ensure that the number of hours she was claiming (and for which she was asking to be paid by the United States) was correct.

4. As part of her scheme to embezzle money from the United States, HARTLINE submitted her own time, without obtaining her supervisor's review or approval of the hours she was claiming. HARTLINE was able to accomplish her scheme by using computer passwords of another employee and, in most instances, submitting her time directly to the finance office.

5. As a federal employee, HARTLINE was issued a government credit card that she was authorized to use if and only if purchases were made on or for authorized government travel. It was further part of HARTLINE'S scheme to embezzle money from the United States by using her government travel credit card for purchases that were strictly personal and not related in any way to official, authorized travel on behalf of the United States Air Force.

6. As a civilian employee of the United States Air Force, HARTLINE was, on occasion, ordered to go on temporary duty assignments (TDYs) away from Bolling Air Force Base to attend official, authorized Air Force business, including assisting Air Force Chaplains. HARTLINE was eligible to be on a TDY if and only if she had received advance approval from a supervisor. Employees receive money in the form of a travel voucher to cover their expenses while on a TDY. It was further part of HARTLINE'S scheme to embezzle money from the United States by submitting fraudulent TDYs for personal travel to Dover, Delaware and to Florida—trips that were not authorized and were not designed to accomplish the mission of the United States Air Force. HARTLINE was able to accomplish this scheme, and avoid obtaining supervisory review or approval of her TDYs, by using another employee's password to submit the TDY orders.

7. Between January 2002 and October 2005, HARTLINE embezzled approximately $131,706.26 from the United States treasury as a federal employee by submitting fraudulent claims for overtime, fraudulently claiming to be working while taking annual leave, fraudulently using a government credit card for personal expenditures, and fraudulently submitting travel voucher payment requests for personal trips. HARTLINE ultimately repaid $4,285.98 for unauthorized purchases she had made on the government travel card

8. Between January 2002 and October 2005, HARTLINE fraudulently appropriated the $131,706.26 in government funds for her benefit and for the benefit of her spouse and family members.

9. Between January 2002 and October 2005, HARTLINE acted knowingly and willingly with the intent to deprive the government of money. For example, on Friday, September 23, 2005, HARTLINE was not working at Bolling Air Force Base. She went that weekend to Dover, Delaware to attend NASCAR races. She falsified Air Force travel orders to gain lodging or billeting at the Dover Air Force Base at a reduced rate: she claimed she was ordered to be at Dover Air Force Base pursuant to a temporary duty assignment ("TDY") but instead only went to the base that weekend to attend the auto race. A proper TDY must be approved in advance by an Air Force employee's supervisor. HARTLINE did not have her supervisor's approval: she fraudulently entered the travel orders into an Air Force computer by using another employee's password. While HARTLINE was in Dover, she fraudulently charged $53.50 to her government travel credit card—a card that she was only authorized to use when on non-fraudulent, authorized government travel. HARTLINE also claimed $194.31 in a fraudulent travel voucher for her unauthorized TDY. HARTLINE did not do approved government work on Friday, September

23, 2005, Saturday, September 24, 2005, Sunday, September 25, 2005, or Monday, September 26, 2005.

10. For Friday, September 23, 2005, and Monday, September 26, 2005, HARTLINE was obliged to charge her absence to her annual leave account. Upon her return to work, HARTLINE fraudulently submitted her own time using another employee's computer password. Even though she was not working on any of those days, and was not authorized to work any overtime hours, HARTLINE claimed the following fraudulent hours on the payroll records she submitted: 8 regular, non-annual-leave hours of pay on Friday, September 23, 2005; 10 overtime hours on Saturday, September 23, 2005; 8.5 overtime hours on Sunday, September 24, 2005; and 8 regular, non-annual-leave hours and 2.5 overtime hours on Monday, September 26, 2005.

11. By using another employee's computer password, and submitting her own, unapproved time, HARTLINE claimed and received payment for 809.25 fraudulent overtime hours for the period of January 2005 through October 2005, for which she received $32,790 from the government. In 2003 and in 2004, HARTLINE billed the government for approximately 3,500 hours of regular, sick-leave, and overtime pay.

## DEFENDANT'S ACCEPTANCE

I have read every word of this Statement of Offense. Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, and after consulting with my attorney, I agree and stipulate to this Statement of Offense.

Date: 3/16/06

Maria R. Hartline
Defendant

I have discussed this Statement of Offense with my client, Ms. Hartline. I concur with her decision to stipulate to this Statement of Offense.

Date: 5/17/2006

Leonard Earl Lucas, Esquire
Counsel for Ms. Hartline