# Exhibit 1

# STATEMENT OF SUSPECT/WITNESS/COMPLAINANT

☒ SUSPECT
☐ WITNESS/COMPLAINANT

## PRIVACY ACT STATEMENT

**AUTHORITY:** 10 U.S.C. 8013; 44 U.S.C. 3101; and EO 9397
**PRINCIPAL PURPOSES:** Used to record information and details of criminal activity which may require investigative action by commanders, supervisors, security police, AFOSI special agents, etc.; and to provide information to appropriate individuals within DoD organizations who ensure proper legal and administrative action is taken.
**ROUTINE USES:** Information may be disclosed to local, county, state, and federal law enforcement/investigative authorities for investigation and possible criminal prosecution or civil court action. Information extracted from this form may be used in other related criminal and/or civil proceedings.
**DISCLOSURE IS VOLUNTARY:** SSN is used to positively identify the individual making the statement.

## I. STATEMENT INFORMATION

| DATE (YYYYMMDD) | TIME | LOCATION AND INSTALLATION (Bldg/Room No) | UNIT TAKING STATEMENT | REPEAT (If known) |
|---|---|---|---|---|
| 20051129 | 2042 | AFOSI Det 332, Bolling AFB, DC | AFOSI Det 332 | OFFENSE / COMPLAINT |

## II. PERSONAL IDENTIFICATION (Print or Type)

| NAME (Last, First, Middle Initial) | SSN | STATUS/GRADE |
|---|---|---|
| Hartline, Maria R. | | Civilian/GS-9 |

| LOCAL ADDRESS (Include Zip Code) | DATE AND PLACE OF BIRTH (If required) | TELEPHONE HOME | DUTY |
|---|---|---|---|
| | 53, MI | | |

| PERMANENT ADDRESS OR HOME OF RECORD (Include Zip Code) | MILITARY ORGANIZATION/EMPLOYER | DEROS |
|---|---|---|
| | HQ USAF/HC | |

### SPONSOR INFORMATION

| NAME (Last, First, Middle Initial) | GRADE | SSN | ORGANIZATION | DUTY PHONE |
|---|---|---|---|---|
| N/A | N/A | | N/A | N/A |

## III. ACKNOWLEDGEMENT OF OFFENSES AND 5TH AMENDMENT/ARTICLE 31 RIGHTS ADVISEMENT (Suspect Only)

I have been advised that I am suspected of the following offenses:
Fraud *mrh*

| ADVISED BY (Full Name and Rank) | INDIVIDUAL IDENTIFIED HIMSELF/HERSELF AS A (SF, special agent, etc.) |
|---|---|
| Chadd Carr | Special Agent |

**SUSPECT INITIALS** — and advised me that I have the following rights according to the 5th Amendment of the U.S. Constitution/Article 31 of the Uniform Code of Military Justice.

| Initials | Right |
|---|---|
| mrh | I have the right to remain silent - that is to say nothing at all. |
| mrh | Any statement I make, oral or written, may be used as evidence against me in a trial or in other judicial, non-judicial, or administrative proceedings. |
| mrh | I have the right to consult with a lawyer. |
| mrh | I have the right to have a lawyer present during this interview. |
| mrh | I may obtain a civilian lawyer of my own choice at no expense to the government. |
| mrh | I may request a lawyer any time during this interview. |
| mrh | If I decide to answer questions with or without a lawyer present, I may stop the questioning at any time. |
| — | ~~MILITARY ONLY: If I want a military lawyer, one will be appointed for me free of charge.~~ mrh |
| mrh | CIVILIANS ONLY: If I cannot afford a lawyer and want one, a lawyer will be appointed for me by civilian authorities. |

**SUSPECT INITIALS** — I have read my rights as listed above and I fully understand my rights. No promises, threats, or inducements of any kind have been made to me. No pressure or coercion has been used against me.
I make the following choice. (Initial One)

| Initials | Choice |
|---|---|
| mrh | I do not want a lawyer. I am willing to answer questions or make a statement or both, about the offense(s) under investigation. |
| | I do not want a lawyer and I do not wish to make a statement or answer any questions. |
| | I want a lawyer. I will not make any statement or answer any questions until I talk to a lawyer. |

*I fully understand my rights and that my signature does not constitute an admission of guilt.*

| SIGNATURE OF SUSPECT | SIGNATURE OF WITNESS/INTERVIEWER |
|---|---|
| Maria R. Hartline | Chadd Carr / CHADD P. CARR, SA, USAF |
| | Trevyr S. Woodard, SA, USAF |

AF IMT 1168, 19980401, V2   PREVIOUS EDITIONS ARE OBSOLETE.   PAGE 1 OF 3 PAGES
*mrh*

### IV. STATEMENT

Overtime - I did not work approximately 70-75% of the overtime hours I claimed on my timecards. I claimed these hours due to financial hardship and needing to pay bills. I fully intended to work all the hours I claimed. However, things would come up at home and I would not be able to come into the office or I would not do the work I had brought home with me. I had a Blackberry assigned to me so I would answer emails after duty hours and on weekends. I would consider this as "duty time" and claim overtime. Before the OSI investigation, I became very concerned on how I would be able to work the hours I had claimed. I lost track of how many hours I would claim and how many hours I needed to work to make up the time. Before the OSI investigation, I had made a conscience and moral decision that I needed to stop claiming the unworked time and find a better solution to my financial problems. Because of my embarrassment and being ashamed of what I had done, I did not discuss the overtime or financial hardship with my supervisor(s). At no time did my supervisor(s) ask me about my overtime. They were aware I would work before and after my duty hours. I knew I would have to make up the time but I was getting too tired and ill and physically could not do it. I am willing to reimburse the government any money which was paid to me that I did not earn. This decision was made by me before this investigation. I had every intention of telling my current supervisor what I had done and had placed myself on his calendar as he was out of town. However, the investigation came about before I had the opportunity. I was aware there were proper procedures for requesting overtime but they were not followed at the Chaplain Service. During my tenure I knew the procedures should have been corrected, but I didn't say anything to anyone. No other civilian employee at the Chaplain Service was involved with the inflation of civilian overtime hours except myself. When I claimed additional overtime hours it was due to numerous financial burdens. I had medical expenses for my father, father-in-law, my husband and myself. My father had colon cancer and was on Medicare but they did not cover all his expenses. No other family members could or would help. Once my father had passed away, we were told by the insurance company that he had out-lived his life insurance policy. Thus again I would have to come up with money for the funeral expenses. My father-in-law developed lung cancer. My in-laws did not have good health care insurance. There were hospital bills and prescriptions to pay. Again, we had in-laws that could or would not assist with these expenses. So we would give my mother-in-law money for these items. Upon my father-in-law's death, we discovered he had a $1,000 life insurance policy. This was not enough to cover the funeral expenses so we had to come up with some money for the funeral. My father and father-in-law lived in Michigan. We also needed money to travel to Michigan for the funerals. Following my father's death, my husband suffered a heart attack. Even though we have health insurance, we had to pay for his prescriptions and medical appointments. Following this event, my husband lost his job. Thus making our financial burden worse. We used the overtime money for these additional expenses/bills. The last time I claimed false overtime was to make my October 2005 house payment of $2900. TDYs- some of my TDYs to Dover were for unofficial business. The main purpose of some of these trips were for the intent of attending a NASCAR race. On all occasions, except for Sep 05, I would visit with the Dover Chapel staff as I considered this "public relations" for the Chaplain Service. On all the Dover TDYs, I would mention to my supervisor or staff members that I was going there and that I would do some "public relations". I would also attend the Saturday evening Mass. In Sep 05, I attend Mass with my husband, but he became ill during the Mass and we left early. We did not stay to visit with any of the chapel staff. This TDY was not in the best interest of the government and I should not have had TDY orders for it. However, upon my return from the TDY, I filed a travel voucher to pay my bills as my husband was still out of a job and there was still the financial hardship and burden. My supervisor(s) were aware of other Dover TDYs as they were for official business and not affiliated with a NASCAR race. In 01-04 the TDY to Orlando, FL was also not in the best interest of the government. I was going there originally to visit with my son, but when some of the office staff found out I was going, they asked me to preview a hotel in the area for a possible site to have a Chaplain Service conference. Once I arrived in Orlando and got settled at my son's house, I ~~mad~~

mrh continued mrh

### V. OATH/SIGNATURE

I hereby voluntarily and of my own free will make this statement without having been subjected to any coercion, unlawful influence, or unlawful inducement. I swear (or affirm) I have read this statement, initialed all pages and corrections, and it is true and correct to the best of my knowledge.

SIGNATURE OF PERSON MAKING STATEMENT: Maria R. Hardine

SIGNATURE OF WITNESS/INTERVIEWER: [signature] / CHADD GRE, SA, USAF

Subscribed and sworn to before me, a person authorized by law to administer oaths, this **29th** day of **November**, **2005** (year).

SIGNATURE OF PERSON ADMINISTERING OATH: [signature] / Trevyr S. Woodard, SA, USAF

### VI. INSTRUCTIONS FOR CONTINUATION PAGE(S)

Use plain bond paper (both sides optional). At the top right of each page, print or type "(Last name of individual making the Statement) on (Date)." At the bottom of each page, print or type: "Page ___ of ___ Pages." The individual must initial the top and bottom entries and sign his/her name at the bottom of each page.

AF IMT 1168, 19980401, V2    (REVERSE)

PAGE 2 OF 3 PAGES

*mrh* Hartline on 29 Nov 05

*mrh* received a phone call from the person I was scheduled to meet at the hotel chain and he cancelled the appointment. I cannot remember the hotel chain nor the name of the person I was to meet. This information would be in my office files. I did file a voucher as I needed to pay a bill. Over the 11+ years that I have been at the Chaplain Service, many staff members have "created" TDYs to accommodate visiting their family members and/or friends. During these 11+ years, many staff members would ask me how they could "justify" going TDY on these types of trips. I knew it was wrong for me and I knew it was wrong for the Chaplain Service staff members. Many of the staff members were hiring ranking than I, so I would try to accommodate their requests. After I returned from the Sep 05 Dover trip, I had made a conscience decision that I was not going to type orders for myself anymore. Again, I wanted things in the "open" and this was on my list of things to discuss with my supervisor at the meeting I had scheduled on his calendar, but never got the chance as the OSI investigation started. The Jun 04 and the Sep 04 Dover TDYs were not in the best interest of the government. While I did attend Saturday evening Mass and visit with some of the Dover chapel staff, my main purpose of going to Dover was to attend the NASCAR race. My supervisor knew I was going to Dover and was aware of my "public relations" for the Chaplain Service. I did file a travel voucher for these trips even though my main purpose was to attend the NASCAR race. I used the money to pay bills. The Jun 02 Dover TDY I am not sure if this was for meetings with Chaplain Jim Browning, Chaplain James Barlow and TSgt Bill Green reference the protocol of Chaplain Barlow's upcoming retirement or if it was for a NASCAR race. They had requested I come to Dover to discuss the protocol issues since the Chief of Chaplains was officiating at this retirement. They asked me to assist as well as work with the Dover AFB Protocol office. On another Dover TDY, I did accompany my supervisor to the retirement ceremony and was on official, approved TDY orders by my supervisor. My TDY orders for these TDYs were prepared improperly. They were prepared using other staff member's passwords which was the practice of the office as it was convenient and gave flexible for us to create orders and get them done. At the time, this was being done, I knew it was wrong to use other people's passwords but it was the practice of the office. I used the Dover orders to secure on-base billeting versus commercial hotel accommodations. During NASCAR races the hotel prices were much higher than on-base billeting. I knew upon returning from the NASCAR races that I should have asked to have my orders revoked as I was not on "official" TDY. I am very remorse for what I have done. I am willing to pay back whatever money I have been unduly paid. However, I am not in a financial position to pay back this money in a lump sum. I am able to repay the government in payments, community service or whatever else is deemed.///End of Statement/// *mrh*

page 3 of 3 pages

*Maria R. Hartline*

0009